UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| ADMIRAL INSURANCE CO | CASE NO. 2:16-CV-00912 |
|---|---|
| VERSUS | JUDGE CAIN |
| ZADECK ENERGY GROUP INC | MAGISTRATE JUDGE KAY |

<u>MEMORANDUM RULING</u>

Before the Court is "Admiral Insurance Company's Motion for Summary Judgment" (Doc. #31) wherein Admiral Insurance Company ("Admiral") maintains that the policies it issued to Zadeck Energy Group, Inc. ("Zadeck") do not provide coverage for the claims brought against Zadeck in the underlying suit, *The Parish of Cameron v. Apache Corp. (of Delaware), et al.,* Civ. Action No. 18-cv-688. Admiral requests that this Court render judgment as prayed for in its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 and declare that Admiral has no defense or indemnity obligations to Zadeck. For the reasons that follow, the motion will be granted.

<u>FACTUAL STATEMENT</u>

On or about May 7, 1996, Zadeck began operating well serial number 218362 (hereinafter referred to as "Well 1") located in Cameron Parish. Zadeck ceased operating Well 1 on or about June 1, 1998, and Iberia Operating Company ("Iberia") began operating Well 1. Admiral issued and re-issued commercial General Liability policies to Zadeck each year covering the collective period from March 13, 2004, until March 13, 2012. Admiral did not issue any insurance policies to Zadeck in 1996, 1997, or 1998.

Zadeck is a named defendant in *The Parish of Cameron v. Apache Corp. (of Delaware, et al* lawsuit. The suit was removed to the United States District Court, Western District of Louisiana. Zadeck tendered a demand for defense and indemnity to Admiral; Admiral agreed to participate in the defense, subject to a full reservation of rights. This action seeks a declaration of the rights and responsibilities of Admiral under the Admiral Policies with respect to Zadeck's request for defense and indemnity in the underlying lawsuit.[1]

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the movant shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. The party moving for summary judgment is initially responsible for identifying portions of pleadings and discovery that show the lack of a genuine issue of material fact. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant makes this showing, however, the burden then shifts to the non-moving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotations omitted). This requires more than mere allegations or denials of the adverse party's pleadings. Instead, the nonmovant must submit "significant probative evidence" in support of his claim. *State*

---

[1] Complaint, Doc. #1.

*Farm Life Ins. Co. v. Gutterman*, 896 F.2d 116, 118 (5th Cir. 1990). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249 (citations omitted).

A court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). The court is also required to view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Clift v. Clift*, 210 F.3d 268, 270 (5th Cir. 2000). Under this standard, a genuine issue of material fact exists if a reasonable trier of fact could render a verdict for the nonmoving party. *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008).

## LAW AND ANALYSIS

Admiral issued insurance policies to Zadeck more than five (5) years after Zadeck ceased operating Well 1. Admiral filed the instant motion to have the Court declare that these policies do not provide coverage for property damage allegedly attributable to the operation of Well 1. Admiral, along with three (3) other insurers, is presently providing a defense[2] under a reservation of rights to Zadeck in the underlying lawsuit originally filed in Cameron Parish and removed to this Court which is pending on this court's docket as Civ. Action 2:18-688.[3] Cameron Parish alleges that Covey Energy, Inc., ("Covey"), Zadeck

---

[2] Admiral remarks that Zadeck's argument as to the eight-corner's rule in support of Admiral's obligation to defend the underlying lawsuit is irrelevant, noting that the instant motion for summary judgment is as to coverage, not a duty to defend motion, noting that Admiral is currently defending the lawsuit.

[3] *Parish of Cameron v. Apache Corp. of Delaware, et al.* The previous docket number was 2:16-538; the State of Louisiana intervened in this suit.

and Iberia drilled and/or operated Well 1, and that those operations and activities environmentally damaged land and waterbodies located in the "Coastal Zone," as defined by the State and Local Coastal Resources Management Act of 1978, within Cameron Parish. The Petition implicates a time period between 1978 and 2016 in which all defendants are alleged to have engaged in activities in the Cameron Parish Coastal Zone resulting in property damages up until the suit was filed in 2016.

Covey operated the well from September 18, 1995, until May 7, 1996. Zadeck operated Well 1 from May 7, 1996, until May 31, 1998, and Iberia began operating Well 1 on June 1, 1998, and remained the operator until the operations ceased and/or Well 1 was abandoned. Specifically, the lawsuit alleges that defendants (1) used unlined earthen waste pits, (2) failed to design the earth pits to prevent the movement of leachate away from the waste facilities, (3) failed to clear, re-vegetate, detoxify and restore the areas to their original condition, causing increasing damage to the Cameron Parish Coastal Zone.[4] The lawsuit further alleges that defendants discharged and/or disposed of oilfield waste in Cameron Parish and/or its Coastal Zone and caused contamination and pollution to the Coastal Zone and waters in the Operational Area.[5] Cameron also alleges that Defendants allowed radioactive materials to accumulate in the soils and ground waters, and Defendants' dredging activities resulted in erosion of marshes, the degradation of terrestrial and aquatic life, and has enabled and/or accelerated saltwater intrusion.[6]

---

[4] 2:16-538, Doc.1-2, ¶ ¶ 20-22.
[5] *Id.*, ¶ 23.
[6] *Id.*, ¶ ¶ 24-25.

Cameron Parish demands damages, costs, attorney fees, and administrative penalties which include all or a portion of the abatement or mitigation of damages, payment of restoration costs, and actual restoration. [7] Cameron Parish also demands the costs necessary to clear, re-vegetate, detoxify, and restore the Coastal zone as near as practicable to its original condition.[8]

As noted above, beginning March 13, 2004, Admiral issued consecutive policies to Zadeck (eight commercial general liability policies and eight umbrella/excess policies). Admiral argues that under the clear and unambiguous policy language, and Louisiana jurisprudence, the Admiral policies issued to Zadeck do not provide coverage for the claims Cameron Parish brings against Zadeck.[9] Zadeck argues that the Petition does not unambiguously exclude the possibility that Zadeck's activities and operations caused property damages during the Admiral 2004-2012 policy periods, which triggered Admiral's obligation to defend Zadeck.

There are four (4) primary theories that courts apply to determine when an insurance policy is triggered—the exposure theory, the manifestation theory, the continuous trigger theory, and the injury-in-fact theory. *Norfolk S. Corp. v. California Union Ins. Co.*, 859 So.2d 167 (La.App. 1 Cir. 12/19/03), *writ denied,* 861 So.2d 579 (La. 12/19/03).

---

[7] *Id.*, ¶ 32.; La. Rev. Stat. 49:214.36(I)(1) and (E).

[8] Civ. Action 2:16-538, Doc.1-2, ¶ 34.

[9] Admiral has reserved its rights pursuant to exclusions in the CGL and Umbrella/Excess policies and pled these exclusions in its Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201 (Doc. #1). Although not argued in this motion, Admiral does not waive those defenses.

*It is proper to consider extrinsic evidence to determine coverage*

First, Zadeck complains that it is improper for this Court to consider a list of oil and gas wells drilled and/or operated by each Defendant, specifically referring to exhibit F. Exhibit F was attached to Cameron Parish's petition as an expansion of ¶ 19 in the underlying lawsuit. Cameron Parish alleges that "[d]efendants drilled and/or operated numerous oil and gas wells within the Operational Area;" that defendant's operations and activities were conducted (or being conducted) to enable or support the drilling and operation of the "oil gas wells listed on Exhibit F"; and that "[a] list of the oil and gas wells drilled and/or operated by each Defendant" was attached as Exhibit F."[10] Zadeck argues that when evaluating a defense obligation, the court can only consider the four corners of the Petition and the four corners of the insurance policies—otherwise known as the "eight corners rule." *Hanover Ins. Co. v. Superior Labor Servs., Inc.*, 179 F.Supp.3d 656,676 (E.D. La. 2016) (factual inquiries beyond the petition for damages and the relevant insurance policy are prohibited with respect to the duty to defend); *XL Spec. Ins. Co. v. Bollinger Shipyards, Inc.*, 800 F.3d 178, 182 (5th Cir. 2015).

Admiral does not contest the eight corner's rule as to an insurer's duty to defend, but remarks that the instant motion for summary judgment seeks to have the Court declare its obligation as to coverage, which could potentially extinguish its duty to defend. Federal Rule of Civil Procedure 10(c) provides that: "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Admiral argues that because

---

[10] See Civ. Action 2:16-538 Doc. 31-2, p. 10, ¶ 19, pp. 41-50; see also this suit, Doc. 35-2, p. 11, pp. 42-51.

Cameron Parish attached the list to its Petition, it is proper for this Court to consider the exhibit because it is a part of and incorporated into the petition. Admiral agrees that under a duty to defend analysis, it cannot rely upon *extrinsic documents,* but because the list (exhibit F) is incorporated into the Petition, it is properly considered part of the "four corners" of the Petition. The Court agrees and finds that it is proper to consider exhibit F in a duty to defend analysis. However, as noted by Admiral, the instant motion is before the Court to decide if the Admiral's policies provide coverage. Either way, it is proper for this Court to consider exhibit F.

Zadeck further challenges this Court's consideration of evidence obtained from the Louisiana Office of Conservation in determining Admiral's duty to defend. The Court agrees that if this motion was based on a duty to defend, this extrinsic evidence would not be considered. However, as noted by Admiral, the instant motion is for the Court to determine coverage. Therefore, the evidence is proper summary judgment evidence and will be considered.

*The exposure theory should be applied*

Admiral argues that pursuant to Louisiana jurisprudence, its policies should be interpreted under the "exposure" theory relying on the exclusions in the excess policies which denies coverage for any loss not covered by the underlying insurance.[11] Admiral maintains that its excess insurance policies do not cover the losses because the "property damage" did not occur during any of the Admiral policy periods, noting that Zadeck ceased

---

[11] See Admiral exhibits "J" through "Q", ADM 000509, ADM 000542, ADM 000588-589, ADM 000631-632, ADM 000673-674, ADM 000716-717, ADM 000759, ADM 000804.

operating the well prior to March 13, 2004. Conversely, Zadeck argues that Admiral has not only a duty to defend it in the underlying lawsuit, but it also has a duty to indemnify it for any damages it is held liable for, not only under the exposure theory, but also under the manifestation theory.

The Admiral policies provide excess liability insurance under Coverage A and umbrella liability insurance under Coverage B. Admiral notes that Coverage A is a following-form policy which follows or adopts the conditions and agreements of the underlying primary liability insurance policy. *Orleans Parish Sch. Bd. v. Lexington Ins. Co.*, 99 So.3d 723, 727 (La. App. 4 Cir. 8/22/12); see also *Bayou Steel Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 642 F.3d 506, 509 (5th Cir. 2011). The obligations of following-form excess insurers are defined by the language of the underlying policies, except to the extent there is a conflict between the two policies, in which case, absent excess policy language to the contrary, the wording of the excess policy will control. BARRY R. OSTRAGER & THOMAS R. NEWMAN, HANDBOOK ON INSURANCE COVERAGE DISPUTES § 13.01[a] (18th ed. 2017) (citing, *inter alia, Estate of Bradley v. Royal Surplus Lines Ins. Co. Inc.*, 647 F.3d 524, 530 n.4).

Admiral asserts that Coverage A also contains a specific exclusion for any loss not covered by the underlying insurance. Thus, Admiral argues that no losses are covered under the Commercial General Liability ("CGL") policies because under the exposure theory, no "property damage" occurred during the CGL policy periods and therefore, the umbrella and excess policies were not triggered.

Admiral issued eight consecutive CGL policies from 3/13/2004 through 3/13/2012.[12]

The insuring agreement in each of the Admiral CGL policies provides:

1. **Insuring Agreement**

   \*\*\*

   b.    This insurance applies to "bodily injury" and "property damage" only if:

   (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

   (2)    The "bodily injury" or "property damage" occurs during the policy period; and

   (3)    Prior to the policy period, no insured listed in Paragraph 1. of section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part.
   If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuance, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.[13]

The Admiral CGL policies define "property damage" as "physical injury to tangible property, including all resulting loss of use of that property."

Admiral issued eight consecutive umbrella/excess policies[14] to Zadeck from 3/13/2004 through 3/13/2012 which provide:

I. **INSURING AGREEMENTS**

---

[12] Admiral exhibits "B" through "I".
[13] Admiral exhibits B-1, Doc. #31-4, pp. 9, 62, 117 and 172, Doc. #31-5, pp. 10, 79, and 146.
[14] Admiral exhibits "J" through "Q".

## COVERAGE A – EXCESS LIABILTIY INSURANCE (FOLLOWING FORM)

Coverage A is excess insurance and follows the underlying insurance except as otherwise stated in this policy.

1.  **We** will pay those sums that the **insured** must legally pay as **damages** because of **bodily injury, property damage, personal injury** or **advertising injury,** caused by an **occurrence** which occurs during the Policy Period which are in excess of the sums payable as **damages** in the **underlying insurance** or would have been payable but for the exhaustion of the applicable Limit of Insurance.
    \*\*\*

4.  Coverage A is subject to the terms of the **underlying insurance** except:[15]
    \*\*\*

## COVERAGE B – UMBRELLA LIABILTY INSRUANCE

Coverage B is excess insurance over a **self-insured retention.** Coverage B applies only to the exposures which are not covered by Coverage A and are not otherwise excluded by this policy or any of the underlying policies.

1.  **We** will pay those sums that the **insured** must legally pay as **damages** in excess of the **self-insured retention** because of **bodily injury, property damage, personal injury** or **advertising injury** caused by an **occurrence** which occurs during the period of this policy.
    \*\*\*[16]

## EXCLUSIONS

\*\*\*

**II.   UNDER COVERAGE A (EXCESS LIABILITY INSURANCE)**

In addition to the exclusions in Section I, above, this policy does not apply under Coverage A to:

1.  Any loss not covered by the **underlying insurance,** and all exclusions now or hereafter contained in the **underlying insurance,** apply to Coverage A with the same force and effect.[17]

---

[15] Admiral exhibit J, ADM000505, Doc. #31-6, p.2.
[16] *Id.* ADM000505, ADM000538, ADM000584-585, ADM000627-628, ADM000669-670, ADM00712-713, ADM000755-756, ADM 000800-801.
[17] *Id.* ADM 000509, ADM000542, AMD000588-589, ADM000631-632, ADM000673-74, ADM000716-717, ADM000759, ADM 000804.

***

# DEFINITIONS

13. **Occurrence** means:
   a.    With respect to **bodily injury** or **property damage:** an accident, including continuous or repeated exposure to substantially the same general condition, which results in **bodily injury** or **property damage** neither expected or intended from the standpoint of the **insured**. . .[18]

It is indisputable that Zadeck ceased operating Well 1 more than five years before the first Admiral policy incepted. Therefore, Admiral posits that Zadeck is unable to meet its burden of proving that any of the Admiral policies were triggered and provide coverage for the claims brought against it by Cameron Parish.

Admiral relies on the exposure theory to support its position that coverage was not triggered during the Admiral policy periods. Under the exposure theory, coverage is triggered by mere exposure to harmful conditions during the policy period. In other words, damage is considered to have occurred when the act which resulted in the damage took place, not when the damage was discovered. *Oxner v. Montgomery*, 794 So.2d 86, 93 (La.App. 2 Cir. 8/1/01), *writ denied,* 803 So.2d 36 (La. 12/7/201).

Admiral relies on *Norfolk S. Corp.*, wherein the court had to decide which theory applied—the manifestation theory or the exposure theory-- to determine when a policy had been triggered. The court noted that Louisiana courts have often adopted the manifestation theory when addressing issues of coverage for property damage *other than long-term*

---

[18] *Id.* ADM000511, ADM000544, ADM000591, ADM000634, ADM000676, ADM000719, ADM000762, ADM000807.

*environmental damage. Id.*(emphasis added). The *Norfolk* court remarked that in cases involving long-term environmental damage, it is virtually impossible to determine the specific damage in existence at any given time or the specific cause of any particular damage because the property damage is generally not due to a single catastrophic event, but to numerous releases and discharges taking place over an extended period of time.

Admiral also cites *Pro-Boll Chem. & Fertilizer Co., Inc. v. U.S. Fid. & Guar. Co.,* 2004 WL 3494045 *5 (W.D. La. Nov. 15, 2004) (citing *Norfolk S. Corp.,* 859 So.2d at 205). In *Pro-Boll,* the court granted summary judgment in favor of the carriers of those policies. In that case, a spill or spills of chemicals from the insured's tanks occurred between the years 1968 and 1982. There was also another identifiable spill on April 12, 2001. *Pro-Boll,* 2004 WL 3494045 @ *4. It was undisputed that no leaks or spills occurred during the 1988-1999 period. The "damage" occurred due to numerous releases or discharges prior to 1988 and during the year 2001.

Certain policies were issued which were effective from 1988 to 1992, and one policy with effective dates from December 15, 1999 through December 15, 2000. Pro-Boll argued that damage in the form of movement of toxaphene and other contaminants in the soil and groundwater took place in the 1988-1992 time-frame. The court rejected this argument because any damage due to toxaphene or other contaminants occurred prior to or after the policy periods.

Zadeck maintains that this Court should apply the manifestation theory. Zadeck argues that the policy language undercuts the exposure theory argument. Moreover, Admiral's interpretation of the exposure theory does not comport with the actual terms of

12

the relevant policies. "An insurance policy is a conventional obligation that constitutes the law between the insured and insurer, and the agreement governs the nature of their relationship." *XL Spec. Ins. Co.*, 800 F.3d at 182. Courts construe insurance policies in accordance with the general rules of contract interpretation outlined in the Louisiana Civil Code. *Houston Specialty Ins. Co. v. Chesapeake Operating,* LLC, 2017 WL 4322828, at *3 (W.D. La. Sept 27, 2017). The intent of the parties as reflected in the words of the policy determines the extent of coverage afforded under an insurance policy. *Royal Manufactured Homes, LLC v. New Hampshire Ins. Co.*, 2010 WL 2607237, at *2 (W.D. La. 6/25/2010). Provisions must be interpreted in light of each other and given the meaning suggested by the contract as a whole. Louisiana Civil Code article 2050. A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not one that renders it ineffective. Louisiana Civil Code article 2049.

Zadeck points to the policies' definition of "Property damage" which it contends directly conflicts with Admiral's argument that property damage occurs when the damage-causing act occurs:

### SECTION V—DEFINITIONS

***

17. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

13

> **b.** Loss of use of tangible property that is not physically
> injured. All such loss of use shall be deemed to occur at the
> time of the "occurrence" that caused it.[19]

Zadeck argues that the definition of "property damage" does not mention the act which resulted in the damage, but instead identifies various forms of "property damage" and specifies different times at which they will be deemed to have occurred. In other words, physical injury includes all resulting loss of use, which "loss of use shall be deemed to occur at the time of the physical injury." Therefore, as to physically injured property, Zadeck maintains that the policies indicate that the manifestation theory applies instead of the exposure theory.

Zadeck posits that if the Court applies the manifestation theory, Admiral's policies afford coverage for property damage occurring during the policy period regardless of when the "occurrence" that led to the damage happened. Zadeck notes that the policies define "occurrence" to include continuous or repeated exposure to harmful conditions, which may take place after the cessation of operations. Therefore, Zadeck maintains that a loss of use of uninjured property during the policy period (3/13/2004- 3/13/2012) but caused by an occurrence taking place before the policy period (1996-1998) would be covered under the Admiral policies.

Zadeck attempts to distinguish the *Norfolk* case, noting that those policies provided coverage for "property damage . . . arising out of occurrences happening during the policy

---

[19] Admiral exhibits B-I, Doc. #31-4, pp. 20, 73, 128, and 183, Doc. #31-5, pp. 21, 90, and 157.

period," and defined "occurrence" as "one happening or series of happenings arising out of or due to one event." *Norfolk*, 859 So.2d at 189. Thus, Zadeck posits that the policies did not require that the property damage occur during the policy period, but instead that an "occurrence" causing the property damage happen during the policy period.

The *Norfolk* court held that coverage was triggered for the policy periods in which operations were conducted, but not for policy periods after the cessation of operations because there were no new occurrences giving rise to the relevant property damage. *Id.* at 192. Zadeck suggests that Admiral's policies require that the property damage occur during the policy periods but does not require that the occurrence giving rise to the damage take place during the policy periods. Thus, under the terms of the Admiral policies, occurrences during Zadeck's operations could have caused property damage that occurred and/or continued to occur after the cessation of operations, and such property damage would be covered.

Admiral argues that Zadeck's interpretation of the policy definition of "property damage" is flawed, as it is "loss of use" that is deemed to occur at the time of the physical injury, noting that "loss of use" is an entire category of insurance law.[20] As argued by Admiral, loss of use within an insurance policy contemplates compensation for the period of time required by the exercise of proper diligence to secure repairs to tangible property that has been damaged. *Jim Carey Distrib. Co., Inc. v. Zinna*, 589 So.2d 526, 528 (La.App. 1 Cir. 1991). The Court agrees that Zadeck's interpretation of the policy definition of

---

[20] There are loss of use claims for tangible property that is not physically injured and loss of use for physically injured tangible property.

"property damage" is flawed and does not transform the policy such that the Court should apply the manifestation theory.

Zadeck also refers to the following provision of the Insuring Agreement which provides that the insurance applies to property damage, only if:

**(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** Prior to the policy period, no insured listed under Paragraph 1 of Section II – Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred in whole or in part.

If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have known prior to the policy period.[21]

Zadeck asserts that the terms of the policy contemplate that the same property damage may occur during the policy period and also have occurred in whole or in part, prior to the policy period. Thus, Zadeck argues that Admiral's application of the

---

[21] Admiral exhibits B-l, Doc. #31-4, pp. 9, 62, and 172, Doc. #31-5, pp. 10, 79, and 146;

exposure theory would render this provision ineffective in violation of Louisiana Civil Code article 2049.[22]

Zadeck argues that  by applying the manifestation theory as suggested by the policies' definition of "property damage," the provision functions to provide coverage for the "continuation, change or resumption" during the policy period for property damage that occurred before the policy period, as long as no insured had knowledge of the property damage prior to the policy period. Thus, Zadeck maintains that Admiral's application of the exposure theory does not comport with the actual terms of the relevant policies and runs contrary to Louisiana contract law.

Admiral counters with the evolution of the "known loss provision," which it states implements the known loss doctrine. Admiral explains that the known loss doctrine is an evolution of the fortuity doctrine that evolved beginning in the eighteenth century—you could not buy insurance for a ship that had already sunk or for your home if it already caught fire. Admiral argues that this provision specifies that the insurance applies only if no insured knew that "damage-causing acts" had occurred, in whole or in part. If an insured knew that "damage-causing acts" had occurred, in whole or in part, then the insurance does not apply. The Court agrees with Admiral that Zadeck's attempt to interpret this provision to undercut the exposure theory is without merit. The Court finds that the exposure theory should be applied to Admiral's policies.

---

[22] La. Civ. C. art. 2049 provides: "A provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective."

*Admiral's duty to defend is extinguished*

Finally, Admiral maintains that if the Court finds that it does not owe indemnity, its duty to defend is extinguished. Zadeck disagrees. Zadeck argues that an insurer's defense obligation can exist even where there is ultimately no coverage. Citing *Yount v. Maisano*, 627 So.2d 148, 153 (La. 1993)(it was unclear from the face of the petition alone whether the injuries that resulted were intended by the insured or whether he knew that they were substantially certain to result); *N. Am. Treatment Sys., Inc. v. Scottsdale Ins. Co.* 943 So.2d 429, 447-48 (La. App. 1 Cir. 2006)(where allegations in petition were broad enough to fall outside the scope of the policy exclusion, insurer breached its duty to defend, although the exclusion actually precluded coverage); *United Fire & Cas. Co. v. Hixson Bros. Inc.*, 453 F.3d 283, 286-87 (5th Cir. 2006)(petition must be liberally construed in favor of the insured and post-petition information revealing no coverage under insurance policy is irrelevant to insurer's duty to defend and such evidence was excluded on summary judgment; because state court allegations do not unambiguously exclude coverage, the insurer has a duty to defend its insured).

Generally, the insurer's duty to defend is broader than its liability for damage claims. This duty to defend suits brought against its insured is determined by the allegations of the injured plaintiff's petition, with the insurer being obligated to furnish a defense unless the petition unambiguously excludes coverage. *American Home Assurance Co. v. Czarniecki*, 230 So.2d 253 (La. 1969); *Meloy v. Conoco, Inc.,* 504 So.2d 833 (La. 1987).

However, as noted by Admiral, it would be illogical to require an insurer to continue to defend a suit once it is established conclusively that the policies provide no coverage.

In this matter, we have determined that because Zadeck's exposure period was from May 7, 1996 until May 31, 1998, there is no coverage under the Admiral policies which incepted on March 13, 2004.

Furthermore, we find that the cases cited by Zadeck (*Yount, Scottsdale,* and *United Fire*) are distinguishable. In *Yount,* the exclusion at issue required a factual finding of the insured's subjective intent. In *Scottsdale,* the insurer established that the "professional services" exclusion applied. However, because the underlying suit was broad enough to encompass negligence that arguably might not have involved professional skill and judgment, the insurer continued to have a duty to defend. Thus, the insurer should have defended the suit until it could establish outside the eight corners that there was no possibility of coverage. In *United Fire,* the issue before the district court was as to a duty to defend only, and the motion for summary judgment was decided under the eight corners only. The Fifth Circuit rejected the insurer's attempt to argue "facts" that were unsupported and had not been before the district court.

These cases are clearly distinguishable to this matter. An insurer's duty to defend ends once undisputed facts show there is no coverage. See *Allstate Ins. Co. v. Roy,* 653 So.2d 1327, 1333 (La. App. 1 Cir. 4/7/95), *writ denied,* 655 So.2d 339 (La. 6/16/95), *writ not considered,* 655 So.2d 339 (La. 6/16/95);[23] see also *Snow Mfg. Co., Inc. v. SnoWizard Holdings, Inc.,* 921 F.Supp.2d 548, 567-68, 572 (E.D. La. 2013) (holding that as a matter of law, an insurer's duty to defend terminates once the undisputed facts establish that the

---

[23] In *Roy,* the petition, as in this matter, failed to allege crucial dates. The court held that once the deposition testimony established undisputed facts that coverage was not triggered, the duty to defend terminated. *Roy,* 653 So.2d at 1333.

claims asserted in the petition are not covered under the policy). Furthermore, a motion for summary judgment is appropriate to determine if an insurance policy, as a matter of law, precludes coverage. *Pioneer Exploration, LLC v. Steadfast Ins. Co.*, 767 F.3d 503, 513 (5th Cir. 2014). The Court agrees with Admiral that because we have determined that the Admiral policies provide no coverage for any liability in the underlying lawsuit,[24] Admiral's duty to defend is now extinguished.

## CONCLUSION

The certified LDNR records conclusively show that Zadeck did not operate and/or conduct any activities on Well 1 after June 1, 1998. Moreover, Zadeck has presented no evidence that it operated or conducted any activities associated with Well 1 during any of the Admiral policy periods. We find that Admiral has met its burden of proving the exclusion in the excess policies, excluding coverage for any loss not covered by the underlying CGL policies; because the CGL policies do not cover these claims, the excess/umbrella policies do not cover the claims alleged in the state court petition. Moreover, the policies issued by Admiral do not provide coverage to Zadeck for the claims brought against it in the underlying suit because the Admiral policies were not triggered. Accordingly, the Court will render judgment declaring that Admiral Insurance Company

---

[24] The Court disagrees with Zadeck that this motion for summary judgment is premature. It is not necessary for the underlying lawsuit to determine liability for the damages alleged prior to determining coverage. *Gibbs Constr., LLC v. Nat'l Rice Mill, LLC*, 56 So.3d 1033, 1041 (La App. 4 Cir. 2/21/18), *writ denied*, 241 So.3d 1012 (La. 2018) (quoting *Stewart Interior Contractors, LLC v. Metalpro Indus, LLC*, 969 So.2d 653, 658 (La. App. 4 Cir. 10/10/07); *Russell v. Eye Assocs. Of N.E. Louisiana*, 74 So.3d 230, 234 (La. App. 2 Cir. 9/21/11); *Muller v. A-1 Mobil Shredding, LLC*, 33 So.3d 285, 287 (La. App. 5 Cir. 2/9/10); *McMath Constr. Co., Inc. v. Dupuy*, 897 So.2d 677, (La. App. 1 Cir. 11/17/04), *writ denied*, 896 So.2d 40 (La. 2005).

has no indemnity obligations to Zadeck Energy Group, Inc. in the underlying suit, and therefore, its duty to defend is extinguished.

**THUS DONE AND SIGNED** in Lake Charles, Louisiana on this *16* day of August, 2019.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT COURT**